IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICKIE BELL, | |
| Plaintiff, | Case No. 13 C 8090 |
| v. | Judge Harry D. Leinenweber |
| PROVISO TOWNSHIP HIGH SCHOOL'S BOARD OF EDUCATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

### A. PRELIMINARY STATEMENT AS TO THE PARTIES' LOCAL RULE 56.1 FILINGS

This an ADA case brought by Plaintiff against her employer, Proviso Township High School's Board of Education (the "Board), contending that the Board discriminated against her in violation of the ADA.  The Board has brought a Motion for Summary Judgment contending that it accommodated her by providing her with 10 months of leave to allow her physical condition to improve, and after Plaintiff cut off contact with the District's Executive Director of Human Resources, terminated her based on abandonment.

Because of the large number of summary judgment motions filed in this Court, and the difficulty in determining whether there are disputed questions of fact that preclude summary judgment, Local Rule 56.1 was adopted.  The rule requires the moving party to set forth in "short numbered paragraphs," facts which it contends entitle it to summary judgment, including specific references to the

supporting materials. The party opposing summary judgment is to file a response, including "a concise summary" of the paragraph, and a response. If there is a disagreement the non-movant must provide "specific references" to supporting materials. If the non-movant desires, it may file a "statement, consisting of short numbered paragraphs" of any additional facts which the party believes require denial of summary judgment. The movant then is entitled to respond to the additional facts. The purpose is to allow the court the luxury of having a relatively simple method in determining whether there are true factual issues that require trial.

To put it mildly, the Plaintiff has, in complete violation of the local rule, destroyed the purpose of Rule 56.1 in providing an efficient way for the court to determine whether there are issues of fact precluding summary judgment. The Plaintiff seems to believe that the purpose of Rule 56.1 is to provide her with a second, repetitive, opportunity to file a brief in opposition to the summary judgment motion. She does this by obfuscating an admitted fact by burying it among a multitude of additional facts which she believes the Court should consider in determining the outcome of the motion. By way of example, Defendant's Fact Number 25 states that "[The plainiff's] severe pain substantially limited Plaintiff's ability to bend, squat, lift, walk, and stand, and prevented her from performing many of her job duties." Instead of admitting or denying this out right, Plaintiff went off on multiple tangents in attempting to establish causation for the pain. Buried in her response she does state that "the severe

pain . . . limited her ability to bend, squat, lift, walk, and stand." She however also sets forth by way of argument, that causation of the pain and limitations was the fault of the District who required her to perform work in three separate capacities. Conspicuous in its absence is any reference to any medical opinion concerning causation. Plaintiff also used this response to argue again that there was a reasonable accommodation that could have been provided. After burdening the Court with 18 lines of argument and citations, Plaintiff concludes her response with the statement that "Bell denies the remaining statements in this paragraph" leaving the Court with the altogether reasonable question as to what facts are being denied and admitted. This is just one of the multiple violations of Rule 56.1.

The Board is not blameless in the violation of Rule 56.1. Again focusing solely on Fact Number 25, the Board has included at least two separate facts it wishes Plaintiff to admit or deny: (1) that Plaintiff was limited in performing a variety of physical activities; and (2) that these limitations prevented her from performing her job duties. In addition, the Board has also burdened the Court by filing a 40-page "Reply" to Plaintiff's 18-page "Response." Moreover, this Reply to Plaintiff's 18 line response to Fact Number 25, is itself 29 lines long. In addition to this response, the Board, apparently believing that the Court cannot determine on its own that the Plaintiff was in violation of the local rule, felt it necessary to burden the Court with a separate Motion to Strike a large portion of Plaintiff's response, a large number of Plaintiff's additional facts,

and a large number of exhibits that Plaintiff attached to her various filings. The net result of these mass Rule 56.1 filings on the part of both parties is a pile of documents that taken together undoubtedly exceeds the Plaintiff's lifting restrictions.

The Court, faced with this mass filing of unnecessary papers, is tempted to strike every document and require the parties to start over. However the Court, not wishing to delay resolution of the case, will wade through the prolix filings and decide the Motion without requiring any further documents. In attempting to clear out the underbrush, the Court will commence by denying the Board's Motion to Strike as unnecessary, because the Court believes it to be fully capable of deciding what documents and facts are legitimately before the Court.

## B.  BACKGROUND

Plaintiff first began working for the District in 1997 as a guidance counselor. This was a ten-month position, meaning that she was not required to work in the summer but received somewhat reduced benefits. She worked in a variety of positions over the succeeding years. In 2012 she began working as a Bandroom Secretary, which was about to be eliminated. In January 2012, she was transferred to the temporary position of Attendance Secretary (the actual Secretary was on leave), and then to the permanent position of Bookroom Clerk. Both the latter two positions were 12-month positions while the Bandroom job was a ten-month position.

The Bookroom Clerk position was physically demanding and included the requirement to carry heavy books, loading and unloading them, and the necessity to crouch, reach, and stand and walk for extended periods of time. The requirement to stand for more than 30 minutes at a time and to lift in excess of 10 pounds were essential functions of the job.

In February 2012, Plaintiff began to experience severe back and knee pain which Plaintiff associated with the demanding requirements of the Bookroom job. The pain was severe and limited her ability to bend, squat, lift, walk, and stand. Plaintiff furnished the Human Resources Director, Brenda Horton ("Horton"), with a note from her doctor which contained the restriction that she refrain from lifting in excess of ten pounds and "no prolonged standing." In order to comply with the restrictions on standing, Horton contacted Plaintiff's doctor, who explained that she meant no standing for more than 30 minutes at a time. Horton evaluated the position and decided that the standing limitation could not be guaranteed and determined that there were no other positions available at the school at that time for which Plaintiff was qualified. As a result, Plaintiff was notified on April 25, 2012 that she could not return to work until her health condition improved. Plaintiff applied for and began to receive disability benefits from the Illinois Municipal Retirement Fund. She subsequently applied for, but was denied, long-term disability benefits.

Because the Plaintiff had not been in contact with Horton for several months, Horton wrote Plaintiff on December 28, 2012, inquiring as to her physical condition and whether she planned to return to work. She was requested to respond to this letter within 5 days. Although Plaintiff received this letter, she did not respond as requested. So, on March 27, 2013, Horton again wrote Plaintiff regarding her intent to return to work. Again she was to respond directly to Horton within 5 days. Plaintiff again failed to respond to the request. Because of her failure to respond to the December 28, 2012 and March 27, 2013 letters, Horton wrote Plaintiff on April 16, 2013 advising Plaintiff that because she did not respond to the letters indicating her intentions regarding returning to work and did not request leave, her failure to return to work was determined to be "absence without leave" and abandonment of her position. She was notified that a recommendation would be made to the Board of Education at its regularly scheduled meeting on May 21, 2013, that her employment be terminated. This letter finally got Plaintiff's attention and on April 21, 2013, she responded to Horton, advising that her doctor had not approved her to return to work without restrictions. She asked for advice whether or not she could return to work with restrictions. However, this proved to be too little, too late, so that on May 21, 2013, the Board of Education accepted the principal's recommendation that Plaintiff be terminated and she was terminated.

## C.  DISCUSSION

The Americans with Disabilities Act (the "ADA") prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The ADA also requires employers to make reasonable accommodation for the disabilities of qualified individuals. 42 U.S.C. § 12112(b)(5)(A). There are two types of claims: disparate treatment and failure to accommodate, and they are analyzed differently. Disparate treatment can be proved as in other employment discrimination cases by showing by direct evidence that the employer discriminated based on the disability or by indirect evidence similar to the *McDonnell Douglas* approach, *i.e.,* (1) that the employee is disabled within the meaning of the ADA, (2) that her work performance met her employer's legitimate expectations, (3) that she was discharged, and (4) that similarly situated non-disabled employees were treated more favorably. *Timmons v. General Motors Corp.,* 469 F.3d 1122, 1126 (7th Cir. 2006). However, the fourth prong is not exclusive. If a plaintiff cannot identify a similarly situated non-disable employee, in some cases the fourth prong can be replaced by a showing that the circumstances surrounding the adverse action indicate that it is more likely as not that the disability was the reason for the action. *Leffei v. Valley Financial Services,* 113 F.3d 787, 794 (7th Cir. 1997). The latter version has been criticized as not really being a method of proving indirect discrimination but a method of proving direct discrimination

by circumstantial evidence. *Larimer v. International Business Machines Corp.*, 370 F.3d 698 (7th Cir. 2004).

The second type of action under the ADA is the failure to accommodate claim. Unlike disparate treatment claims, the *McDonnell Douglas* burden shifting approach is not used. Under this claim a plaintiff must show that she is a qualified individual with a disability, that the employer was aware of the disability and the employer failed to make her a reasonable accommodation. Reasonable accommodations can include making existing facilities readily accessible to and usable by individuals with disabilities, job restructuring, such as modified work schedules, reassignment to vacant positions, and other similar accommodations. However the plaintiff must prove that she was a qualified individual, *i.e.,* that she was capable of doing the job with or without a reasonable accommodation. The determination of whether and what type of accommodation is necessary is a two-way street. Under federal regulations "it may be necessary for the [employer] to initiate an informal interactive process with the individual with a disability." 29 C.F.R. § 1630.2(o)(3). This interactive process envisions participation by both the employer and the employee.

In this case, Defendant argues that Plaintiff's Complaint only pleads disability discrimination and not failure to accommodate. This, however, short changes Plaintiff's Complaint which the Court reads as pleading both claims. However, both of her claims fail due to the same shortfall. Both parties acknowledge that Plaintiff was

disabled at relevant times. She was therefore a "disabled person" under the ADA. Her doctor stated that she could not work without the severe lifting and standing limitations. Plaintiff admits that these restrictions were incompatible with the essential functions of the Bookroom clerkship. She therefore is not a "qualified person with a disability." She has not produced any evidence, including any additional medical evidence, which her physical circumstances had changed. She also has not proved that there was any accommodation that would allow her to perform the essential functions of the job of Bookroom clerk. She was allowed to remain off work for approximately eleven months before the District became concerned about when or whether she ever intended to or would be physically able to return to work. According to her records, she was receiving disability payments up to and including her discharge. There is no evidence in this case as to whether Plaintiff ever got to the point where she could return to work without disabling restrictions. She received two requests for updates as to her then current conditions, in December 2012 and March 2013. She did not contact the District and did not provide the requested updates. She claims that she did not do so because in previous dealings she thought that the Director of Human Resources was "short" with her. If she had responded to either or both of the these requests to contact the District, she and the District could have engaged in the interactive process to determine whether there was in fact an accommodation that would have allowed her to perform the essential functions of the job.

Plaintiff admitted that the lifting and standing requirements of the Bookroom clerkship exceeded her physical ability to perform. She says that she could and should have been given a reasonable accommodation which she claims would have allowed her to return to work. However, she never made any effort to communicate with Horton or anyone else at the school about any suggested accommodation. She refused to contact Horton when she requested that she do so. No interactive process is possible if the employee does not stay in contact with the employer. She now suggests in her brief that she could have been accommodated by letting her sit on a stool. This apparently was first suggested during the deposition of Dr. Kirkland, the District Superintendent. It is too late to attempt to commence the interactive process after suit was filed and while engaged in discovery.

The issue for the Board was how long must it wait to have the position of Bookroom Clerk filed on a permanent basis. All the Board knew was that Plaintiff had not returned to work, was receiving disability benefits, and was ignoring requests for updates. Thus, Plaintiff, while it is conceded that she was a disabled person within the meaning of the ADA, has not proved that she was a qualified individual who was capable of doing the job with or without a reasonable accommodation. While failure to accommodate reasonable requests for medical leave violates the ADA, it is reasonable only if it is for a short amount of time and not indefinite. *Oestringer v. Dillard Store Services, Inc.,* 92 Fed.Appx. 339, 341 (7th Cir. 2004). One whose prospects for return to work is indefinite is not a

qualified individual with disabilities. *Byrne v. Avon Products, Inc.,* 328 F.3d 379, 381 (7th Cir. 2004).

Plaintiff also makes a claim for retaliation. To establish such a claim, a party must prove that she (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) a causal connection existed between the two. *Johnson v. West,* 218 F.3d 725, 732 (7th Cir. 2000). Plaintiff filed an EEOC charge on July 20, 2012, and she was discharged on May 21, 2013, just over 10 months later. The Board contends that this is too long a gap and cites *Filopovic v. K &J R Express Systems, Inc.,* 176 F.3d 390, 399 (7th Cir. 1999) (four months is too long). Plaintiff says that she can prove retaliation because there was no other reason to discharge her. However, based on the Court's ruling here that the Plaintiff abandoned her job, ends this argument.

Accordingly, the Court grants the Board's Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment [ECF No. 64] is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:1/25/2016

- 11 -